# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| EYE CARE LEADERS PORTFOLIO HOLDINGS, LLC, *et al.*,[1] | § § § § | Case No. 24-80001(MVL) (Jointly Administered) |
| Debtors. | § § | |

**DECLARATION OF MARK SHAPIRO IN SUPPORT OF
DEBTORS' EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL
ORDERS (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN POSTPETITION
FINANCING AND (B) UTILIZE CASH COLLATERAL, (II) GRANTING LIENS
AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) GRANTING
ADEQUATE PROTECTION, (IV) MODIFYING THE AUTOMATIC STAY,
(V) SCHEDULING A FINAL HEARING, AND (VI) GRANTING RELATED RELIEF**

Mark Shapiro, declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1. I am a Senior Managing Director of B. Riley Advisory Services ("B. Riley Advisory"), the Debtors' proposed Financial Advisor. As a result of my tenure with the Debtors and my turnaround experience, my review of public and non-public documents, and my discussions with other members of the Debtors' management team, I am generally familiar with the Debtors' businesses, financial condition, policies and procedures, day-to-day operations, and books and records. Except as otherwise noted, I have personal knowledge of the matters set forth

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtors' federal tax identification number are as follows: ECL PH Services Group LLC (6746); Eye Care Leaders Portfolio Holdings, LLC (0576); Alta Billing Holdings, LLC (4944); Alta Billing, LLC (4823); Canta Health, LLC (7791); DJRTC, LLC (N/A); ECL Group, LLC (9195); ECL Holdings, LLC (8888); Eye Care Leaders Holdings, LLC (1701); iMedicWare, Inc. (6251); IMW EMR, LLC (6421); IMW Holdings, LLC (3980); Insight Software, LLC (8321); Integrity EMR Holdings, LLC (3877); Integrity EMR, LLC (3716); IO Practiceware, Inc. (4507); IOPW Holdings, LLC (0461); IOPW, LLC (N/A); Keymed Holdings, LLC (0301); Keymed, LLC (9379); MD Office, LLC (9075); MDO Group Holdings, LLC (0435); MDX, LLC (5074); Medflow Holdings, LLC (7716); Medflow, Inc. (N/A); MNI Holdings, LLC (7633); MRX Holdings, LLC (N/A); My Vision Express, Inc. (N/A); Penn Medical Informatics Systems, LLC (4584); PI Software Holdings, LLC (N/A); PI Software, LLC (N/A); PMX, LLC (N/A); Revenue Health Solutions, LLC (7025); RHS Holdings, LLC (N/A); and The Hoehne Group – Software Division, Inc. (7788). The Debtors' principal offices are located at 555 S. Mangum Street, Suite 100, Durham, NC 27701.

herein or have gained knowledge of such matters from the Debtors' employees or retained advisors that report to me in the ordinary course of my responsibilities.

2. I am over the age of 18, and I am authorized to submit this declaration (this "Declaration") on behalf of the Debtors in support of the *Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* (the "DIP Motion").[2]

3. Pursuant to the DIP Motion, the Debtors request authority to: (a) enter into a senior secured loan facility in an aggregate principal amount of up to $8.0 million (the "DIP Financing") with up to $1.3 million to be drawn on an interim basis; (b) use cash; and (c) grant adequate protection to the Prepetition Lenders. It is my opinion, based on my experience as detailed below, that the proposed DIP Financing is the product of arm's-length negotiations, represents the best postpetition financing available to the Debtors given the circumstances of these chapter 11 cases, and that entering into the DIP Financing is in the best interest of the Debtors, the Debtors' estates, and all parties in interest.

4. References to the Bankruptcy Code (as defined herein), the chapter 11 process, and related legal matters are based on my understanding of such as explained to me by counsel. If called upon to testify, I would testify competently to the facts set forth in this declaration.

---

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the DIP Motion.

**Qualifications**

5. I have been employed at B. Riley Advisory since 2016.[3] Prior to that time I managed Challenger Advisors LLC, a Dallas-based turnaround financial advisory firm and before that served as Chief Financial Officer for a number of public companies, including Big Lots Inc. and Central Parking Corp, as well-as private equity-owned portfolio businesses. I received my Bachelor of Science degree in accounting from The Ohio State University and began my career with Ernst & Young in New York. I am a Certified Public Accountant (inactive).

6. I have over twenty-five years' experience as a turnaround advisor and corporate financial executive, and have advised debtors, secured lenders, trade creditors and equity holders in both out of court and in court proceedings. I have extensive experience in U.S. Bankruptcy Courts (including the Northern District of Texas) and have been involved in numerous chapter 11 cases and court-appointed receiverships.

7. In addition to working with the Debtors, I have played various roles with respect to both company-side and creditor/committee-side engagements. Representative cases include Bela Flor Nurseries Inc. (CRO), Kalera Inc. (CRO), Limetree Bay Services LLC (CRO), Christian Care Centers Inc. (CRO), Fresh Acquisitions LLC (CRO), PBS Brands Inc./Punch Bowl Social (CRO), Loves Furniture, Inc. (Debtor's FA), GGI Holdings LLC/Gold's Gym (Debtor's FA and Liquidating Trustee), Pine Creek Medical Center (CRO), Lockwood Holdings LLC (CRO), Uplift Rx LLC/Alliance Health (Debtors' FA and Liquidating Trustee), Neighbors Legacy Holdings Inc. (Unsecured Creditors Committee FA and Creditor Trustee), Eagle Pipe, LLC (Debtor's FA) and Bristow Group Inc. (Equity Committee FA).

---

[3] My original tenure, starting in 2016, was with GlassRatner Advisory & Capital Group. B. Riley Financial Inc. acquired GlassRatner in August 2018 and GlassRatner rebranded as B. Riley Advisory Services in January 2020.

4855-1679-0687

**Debtors' Immediate Need for DIP Financing**

8.  The Debtors' prepetition capital structure is described in the DIP Motion and in the *Declaration of Sophia Turrell, Chief Executive Officer, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 14] (the "First Day Declaration").

9.  To finance these chapter 11 cases, the DIP Lender has agreed to provide the Debtors with DIP Financing in the principal amount of $8.0 million, comprised of up to $1.3 million on an interim basis and up to an additional $6.7 million on a final basis, subject to the DIP Lender reducing the total commitment, in its discretion, if the requested priming liens are not granted as part of the Final DIP Order. The DIP Financing will bear interest at the rate of 15% per annum and will mature on July 31, 2024. Default interest will run at 17%, and the form of Interim DIP Order also contains certain case- and sale-related milestones.

10. Obtaining the DIP Financing is necessary to maintain the Debtors' business operations and to conduct these chapter 11 cases. In the current environment, it is critical for the Debtors to maintain sufficient liquidity to fund operations and to provide confidence to their vendors and customers that it is "business as usual." The DIP Financing will provide the Debtors with the liquidity needed to operate their business in the ordinary course during these chapter 11 cases, as well as finance these cases. If the Debtors are unable to access the DIP Financing, there is a substantial risk that their ability to continue operating as a going concern will be negatively impacted, resulting in a significant deterioration in the value of the estate assets, and immediate and irreparable harm to the Debtors and their stakeholders.

11. The DIP Financing requires the Debtors to pay an Origination Fee of $300,00, upon the Closing Date, which will be retained by the DIP Lender and offset against the initial $1.3 million interim advance. There is also a Closing Fee of $200,000 that will be earned upon entry of the Interim DIP Order, but that will be waived if the DIP Lender is the successful purchaser of

the Debtors' assets.  These fees are a required feature and a condition to the DIP Lender's willingness to provide the DIP Financing.

12. The other features of the proposed DIP Financing—covenants, events of default, remedies upon default, and the priority claims and liens to be granted to the DIP Lender, among other things—are, based on my experience, common, market-based, and normally approved by bankruptcy courts in connection with DIP financing generally.

13. As set forth in the DIP Motion and based on my investigations to date as well as discussions with the Debtors' executive management team and counsel, there do not appear to be any deposit account control agreements ("DACAs") executed by the Debtors in favor of the Prepetition Lenders.  Similarly, there do not appear to be any DACAs executed with respect to any of the Debtors' deposit accounts set forth in the Cash Management Motion [Docket No. 7].  To that end, the only deposit accounts maintained by the Debtors are those set forth in the Cash Management Motion.

14. I am also informed there may be other deficiencies in the Prepetition Lenders' liens, and that the liens and claims of the Prepetition Lenders may be subject to recharacterization and/or equitable subordination.

**Debtors' Efforts to Obtain Postpetition Financing**

15. The Debtors retained the services of B. Riley Advisory on or about December 20, 2023.  Since that time, B. Riley Advisory has provided financial advisory services which include exploring financing options to address the Debtors' liquidity constraints.  To that end, B. Riley Advisory contacted approximately 58 sources for a potential DIP loan and/or to serve as a potential buyer of the Debtors' assets, comprised of 22 strategics in the industry (who could serve as a potential stalking horse bidder for the Debtors' assets, a DIP lender, or both) as well as 36 more traditional non-strategic sources of financing.  Approximately 34 entities signed a nondisclosure

4855-1679-0687

agreement and were provided access to a confidential data room. As of today, the proposed DIP Lender is the only party who has made a proposal that can be acted upon. Indeed, the DIP Lender—for purposes of the Interim DIP Order only—is willing to take a junior lien on the assets of the Allegedly Encumbered Debtors; all other financing sources were unwilling to take a junior lien on any assets. That said, between the time of the Interim Hearing on the DIP Motion and the Final Hearing, I plan to work with the Debtors and third parties to further market the DIP Financing to further ensure that the Debtors will incur postpetition financing on the best possible terms.

16. The proposed DIP Lender is an independent third party, not an insider of the Debtors and, upon information and belief, not in any way connected to Global Growth Holdings, Inc. or any of the individuals or entities otherwise associated with Global Growth or Greg Lindberg. I believe the terms of the DIP Financing are fair and reasonable under the circumstances, market-based, and that the DIP Financing is the product of good faith, arms-length negotiations and approvals by me and counsel, the DIP Lender and the Debtors' executive management team.

17. The DIP Facility is the best (and only actionable) financing alternative available to the Debtors because it: (i) avoids delay and expense; (ii) provides sufficient financing to meet the Debtors' proposed liquidity needs; and (iii) is a critical component necessary to maximize value through either a stand-alone restructuring or a sale.

18. I also believe, based on my experience and my knowledge of the Debtors and their operations, that the milestones contained in the DIP Term Sheet and form of Interim DIP Order, although slightly tight, are nonetheless reasonable and achievable, and will assist with bringing these cases to a swift and value-maximizing emergence from chapter 11.

6

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct.

Dated: January 23, 2024

/s/ *Mark Shapiro*
Mark Shapiro
Senior Managing Director
B. Riley Advisory Services

4855-1679-0687